**GALEN MEDICAL ASSOCIATES INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Deborah Downing MD, PLLC, Intervenor.**

No. 02–410C.

United States Court of Federal Claims.

April 4, 2003.

---

Terry Wallace, Meridian, Mississippi, for plaintiff.

Brian S. Smith, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With him were Robert D. McCallum, Jr.,

Assistant Attorney General, David M. Cohen, Director, and Mark Melnick, Assistant Director.

J. Michael Littlejohn, Wickwire Gavin, Vienna, Virginia, for intervenor.

## OPINION

BRUGGINK, Judge.

This post-award bid protest stems from a request for proposals, Solicitation 586–44–01, issued by the G.V. Sonny Montgomery Veterans Affairs Medical Center ("VA") on May 4, 2001. The contract was eventually awarded to the intervenor, Deborah Downing MD, PLLC ("Dr. Downing"). The solicitation was the subject of two protests to the United States General Accounting Office ("GAO"). The first was denied as moot after the VA took corrective action. The second concluded that plaintiff lacked standing. Plaintiff filed its complaint here on April 30, 2002 and Dr. Downing intervened on December 4, 2002. Limited discovery was allowed. Pending are the parties' cross-motions for judgment on the administrative record. Oral argument was held on March 28, 2003. At the conclusion of arguments, relief was denied for the following reasons.

## BACKGROUND

The VA issued the solicitation on May 4, 2001, requesting proposals for providing delivery and management of primary and preventive medical care and continuity of care for veterans in and around Meridian, Mississippi. The contract was for one year with four option years. The VA estimated that the contractor would provide services to approximately 2600 to 3000 patients from six Mississippi counties in the first year. The solicitation was a "best value" procurement and stated that it would evaluate proposals based on technical capability, past performance, and price. The initial solicitation stated that technical capability was weighted "slightly" more than past performance, even though it was assigned ninety points in the actual scoring, compared to ten points for

past performance. The solicitation also provided that the VA intended to evaluate offers and award the contract with no discussions with offerors, but that the VA reserved the right to conduct discussions.

The VA initially received bids from three offerors: plaintiff Galen Medical Associates, Inc. ("Galen"), Dr. Downing,[1] and CR Associates. Plaintiff submitted its proposal to VA officials on May 31, 2001. This proposal included both a primary and an alternative clinic site location. Plaintiff's primary location was the same location and facility owned by Riley Memorial Hospital and used by Dr. Downing at the time of the solicitation. The alternative site was a facility owned by plaintiff. Plaintiff's original proposal also listed prospective staff, which included two certified nurse practitioners who were then employed by Dr. Downing at the VA clinic.

The VA concluded its initial evaluation of proposals for technical scores and price on June 5, 2001. Plaintiff, at that time, had an overall score of 189 (89 technical score + 100 price score), Dr. Downing scored 183 (90 + 93), and CR Associates scored 185 (93 + 92). Plaintiff offered a lower price ($4,261,950) than Dr. Downing ($4,564,800).

On June 7, 2001, the VA issued its written request for Best and Final Offers ("BAFO") to be submitted by noon on June 8. Plaintiff responded that day and maintained its original offer as its BAFO. It is unclear from the record exactly when Dr. Downing returned her BAFO, possibly either June 6 or June 8. Apparently, however, other documents from Dr. Downing were submitted after the BAFO closing date. Dr. Downing's BAFO decreased her price to $4,206,900. Additionally, Ms. Susan Newton, the contracting officer, made an adjustment to correct a mathematical error to Dr. Downing's BAFO price proposal without the knowledge or advance consent of Dr. Downing.[2]

VA evaluators reviewed and re-scored the proposals of the bidders at some point thereafter, though it is not clear from the record when the scoring took place. After this eval-

---

1. Dr. Downing was the incumbent contractor. Plaintiff alleges this prior contract was awarded without competition.

2. This VA correction actually increased Dr. Downing's price.

uation, Dr. Downing's score was 190 (90 + 100) and plaintiff's score was 188 (89 + 99). The score sheets reflect some scoring changes without explanation or documentation.

The VA wrote a letter to plaintiff on July 17, 2001 requesting that the offer be held open another sixty days. Plaintiff agreed. By letter dated July 27, the VA notified plaintiff that it had awarded the contract to Dr. Downing.

On August 3, 2001, plaintiff informed the VA that it wanted to engage the agency protest process and requested an opportunity for open and frank discussions pursuant to Federal Acquisition Regulations. *See* 48 C.F.R. § 33.103(b) (2002). Plaintiff's letter also requested documentation regarding the acquisition process. The VA's response letter of the same date denied plaintiff's request (except to provide the names of all offerors furnished with the solicitation) and denied plaintiff's request for discussions.

Plaintiff filed its formal protest with the VA, alleging bias and wrongful award of the contract. The VA took no action, so plaintiff provided notice to the VA on August 15, 2001 that it intended to file a protest with GAO unless the VA immediately addressed its challenges. The VA responded by three letters dated August 17: one withdrawing its earlier August 3 response to plaintiff; a second letter acknowledging receipt of plaintiff's protest; and a third letter which supplied plaintiff with additional documentation regarding the solicitation.

Plaintiff filed its formal protest with the GAO on August 24, 2001, alleging a pattern of procurement violations. On September 24, the VA submitted its report to GAO, arguing alternatively that the protest was not timely filed or that the VA's evaluation of proposals was reasonable.

On October 16, 2001, the VA submitted to GAO a determination of corrective action on certain issues relating to the solicitation and requested that the remaining issues be dismissed by GAO in order for the agency to amend the solicitation and re-evaluate the bidders' proposals. Plaintiff objected to the VA's request, but GAO granted it, and, on October 29, dismissed plaintiff's protest as moot, subject to corrective action by the VA.

On November 8, 2001, the VA amended Solicitation 586–44–01 and sought new proposals from the three bidders. The amendment changed the solicitation's wording regarding the weight of two evaluation factors. Instead of being only "slightly" more important, technical capability was now considered "significantly" more important than past performance. The actual score sheet point allocation was not changed. As part of the corrective action, the VA allowed offerors fully to revise their previous proposals; it intended to re-evaluate all proposals. Dr. Downing continued to perform under her previous contract during this time.

Plaintiff submitted a letter to the VA on November 13, 2001 asking whether the amended solicitation would be "with discussion" or "without discussion." The VA replied on November 16 that the solicitation was a "negotiated procurement," that all offerors had an opportunity to re-submit proposals, and that the VA was currently in the negotiation process.

On November 20, 2001, plaintiff re-submitted its proposal. The technical aspects of the proposal remained the same, but it lowered its price. At $3,648,900 plaintiff's price was lower than all other offers. Dr. Downing resubmitted her proposal with a price of $4,206,900. Dr. Downing's revised proposal package also claimed preferential status as a "Disabled Veteran Owned Small Business Concern," even though the status was irrelevant to the proposal and the representation may have been inaccurate.[3] CR Associates submitted a revised proposal on November 15, but VA evaluators did not consider its revised price of $4,165,572 because the contracting officer viewed the revision as a counter-offer which did not meet the technical specifications of the solicitation.

VA officials assigned a reconfigured evaluation panel to examine the proposals. Only one of the original panelists, Ms. Gloria Ma-

---

**3.** The deposition of Ms. Newton suggests clearly that this assertion by Dr. Downing was incorrect. Whether the agency should pursue that with Dr. Downing is not properly before the court.

tory, remained. On November 29 and 30, 2001, the new panel re-evaluated the proposals pursuant to the corrective action. After evaluation, Dr. Downing's score was 179 (92 technical score + 87 price score), plaintiff's score was 175 (75 + 100), and CR Associates' score was 173 (93 + 80). On December 13, the VA informed plaintiff that the contract had been awarded to Dr. Downing. Dr. Downing's performance on the VA contract continues to the present on a renewal term.

Plaintiff filed another GAO protest on December 18, 2001. The GAO dismissed the protest, stating that plaintiff lacked standing because its technical proposal was non-responsive. Plaintiff filed this action on April 30, 2002, complaining that VA officials abused their discretion and arbitrarily and capriciously awarded the contract to Dr. Downing. Plaintiff also alleges that VA officials were biased in favor of Dr. Downing. Plaintiff requests the court to enjoin the award permanently, order the VA to award the contract to plaintiff, and award plaintiff costs. Alternatively, plaintiff asks the court to order re-solicitation.

## DISCUSSION

The government and intervenor argue that plaintiff does not have standing, adopting the GAO view that plaintiff's proposal failed to include any adequate site for the clinic, rendering the submission non-responsive and ineligible for award. We disagree with the GAO approach to this issue and consequently that basis for defendant's and intervenor's motions for summary judgment.

■ To have standing, plaintiff must be an "interested party." *See* 28 U.S.C. § 1491(b)(1) (2000). The statute does not directly define this term, but the Federal Circuit has held that the term is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n Of Gov't Employees v. United States*, 258 F.3d 1294, 1299–1302 (Fed.Cir.2001) (using the definition found in the Competition in Contracting Act, 31 U.S.C. § 3551(2) (2000)). This standard weeds out protestors that do not submit proposals, withdraw from the pro-

curement, or finish lower than second after evaluation. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed.Cir.2001) (using the Competition in Contracting Act standard). Plaintiff, however, passes the test.

■ Plaintiff submitted a bid and its proposals were evaluated on the merits by the VA, not rejected as non-responsive. Though the evaluators reduced plaintiff's scores for lack of a viable site, there is no evidence that they found plaintiff's proposal technically unacceptable. In fact, plaintiff finished second to Dr. Downing after *both* evaluations. Plaintiff therefore had a substantial chance of receiving the award and a "direct economic interest." *See id.*

Proceeding to the merits of the case, plaintiff presents two arguments: 1) that the VA's decision to award the contract to Dr. Downing was arbitrary, capricious, and an abuse of discretion, and 2) that conduct of VA officials during the procurement process demonstrates clear bias in favor of Dr. Downing.

■ We note first that our standard of review in post-award bid protest cases is narrow. We may only set aside the contract if the VA's actions were arbitrary, capricious, or otherwise not in accordance with the law. 28 U.S.C. § 1491(b)(4) (2000) (adopting the standard of 5 U.S.C. § 706 (2000)); *see, e.g., Omega World Travel v. United States*, 54 Fed.Cl. 570, 574 (2002) (citing 5 U.S.C. § 706(2)(A)). Additionally, we assume that the government acts in good faith while contracting and a protester needs "well-nigh irrefragable proof" that the government had an intent to injure it to overcome this presumption. *Knotts v. United States*, 128 Ct. Cl. 489, 492, 121 F.Supp. 630 (1954); *accord Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed.Cir.1995). The burden is therefore on plaintiff to show that, but for the alleged error in the procurement, it likely would have been awarded the contract. *See, e.g., Omega World Travel*, 54 Fed.Cl. at 574. A protestor's burden is higher for a negotiated procurement because the contracting officer has broad discretion when engaging in an inherently judgmental process. *See, e.g., id.* at 578.

### I. Events surrounding the initial solicitation

Our review is normally confined to the administrative record developed before the contracting agency. *Id.* at 574. In this instance, however, the court allowed plaintiff to explore the contours of the administrative record through depositions. Much of the evidence on which plaintiff relies relates to events before its initial GAO protest and thus before the amended solicitation. Plaintiff makes a number of points. First, the record is unclear on what date Dr. Downing submitted her BAFO materials. Some of them may have preceded the VA's official request for BAFO. Others apparently came in after the "request" date for BAFO materials. According to plaintiff, this indicates potentially improper substantive discussions between Dr. Downing and VA officials. Plaintiff also points to changes made by the contracting officer to the price in Dr. Downing's BAFO without consulting Dr. Downing. Plaintiff alleges that VA evaluators ignored Dr. Downing's performance on her incumbency contract. It also points to unexplained scoring changes during the evaluation process. Finally, plaintiff argues that it was prejudiced because the VA failed to provide proper notice of debriefing rights and failed to cooperate with plaintiff's attempts at post-award review.

Plaintiff's complaints regarding the initial solicitation, however, were rendered moot when the VA vacated the award and agreed to amend the solicitation. On the other hand, plaintiff's allegations of a pattern of bias are based on these same events as well as events relating to the amended solicitation. We will assume, without deciding, that a long pattern of questionable activity might be relevant to prove agency bias. In considering plaintiff's bias claim, therefore, we take into account all circumstances surrounding the procurement.

■ Although Dr. Downing's BAFO materials may have been received both before and after the BAFO "request" date, the deadline given was not a hard and fast cut-off. The late receipt of documents therefore was not necessarily improper, nor does it indicate improper discussions with Dr. Downing. Nor does the possibility that Dr. Downing may have submitted some of her BAFO materials prior to the VA's BAFO request provide clear and convincing evidence of agency bias.

The evaluator score sheets were works in progress. The lack of explicit evaluator documentation of changes by itself does not support a finding of bias. Moreover, without strong evidence to the contrary, unexplained changes to the score sheets are assumed to be properly within the scope of the evaluation.

Plaintiff alleges that Dr. Downing had "negative" past performance that improperly was ignored by the VA evaluators. The only source for the allegation that there was such negative information was counsel's statements in briefing and oral argument. There is no evidence in the record of Dr. Downing's allegedly "negative" performance. In any event, all bidders were uniformly evaluated on their past performance through the requirement of three references.

■ Though Ms. Newton adjusted Dr. Downing's BAFO price proposal to correct an obvious error, this does not indicate agency bias. In fact, the adjustment by the contracting officer actually increased Dr. Downing's price and could have decreased her overall score.

Finally, plaintiff also alleges that it was prejudiced because the VA failed to comply with proper post-award procedures. Namely, plaintiff asserts that the VA failed to provide a statement in the solicitation advising offerors of a post award debriefing, failed in its solicitation to provide information about what documents were subject to disclosure subject to 41 U.S.C. § 253b (e)(4) (2000), refused to provide a list of documents or portions of documents to be disclosed or withheld from the VA report to the GAO pursuant to 4 C.F.R. § 21.1 (2002), denied plaintiff relevant and necessary information under the Freedom of Information Act,[4] and failed to provide open and frank discussions pursuant to 48 C.F.R. § 33.103(b) (2002).

---

**4.** 5 U.S.C. § 552 (2000).

**110**

With respect to the allegations concerning omissions from the solicitation, we note two things. First, any objection about omissions in the solicitation should have been apparent and complained of prior to bidding. Second, if there was such an omission, and if the omission violated applicable law, this could not be evidence of bias in favor of Dr. Downing. All potential bidders would have been affected by this failure. The next two allegations concerning failure to produce documents concern matters which could only be heard by the GAO and a district court, respectively. Finally, with respect to the allegation that the VA violated 48 C.F.R. § 33.103(b), while it may have been better practice to fully debrief plaintiff, we find that the "best efforts" standard used in that regulation is too flexible under these facts to permit a finding of a clear violation of law. In short, none of these assertions individually or collectively demonstrate bias.

## II. Events surrounding the amended solicitation

With respect to the amended solicitation, plaintiff cites several instances which, it alleges, show that the VA improperly evaluated Dr. Downing's past performance. First, it contends that the amended solicitation improperly was conformed to Dr. Downing's proposal. We disagree. The initial solicitation stated that technical capability would be weighted "slightly" more than past performance. After amendment, the solicitation indicated that it would be weighted "significantly" more then past performance. Though the wording of the solicitation changed after amendment, the actual allocation of points did not. Evaluator score sheets remained constant for both solicitations, allocating ninety points for technical capability and only ten points for past performance.

The amended solicitation requested three references to validate "past experience and any current contracts providing services of this type." Evaluators deducted points for plaintiff's references as unresponsive to the

solicitation request because one of plaintiff's proposed references was not relevant to plaintiff's track record of professional performance or professional capability to operate a clinic.[5] Plaintiff has not challenged this assessment. Finally, as indicated above, there is no evidence of Dr. Downing's "negative" past performance.

Plaintiff alleges that Dr. Downing's claim that her business was a "Disabled Veteran Owned Small Business Concern" was untrue. There is no evidence in the record, however, that evaluators gave any preference to Dr. Downing based on that alleged status. Plaintiff, therefore, cannot show that it suffered any prejudice.

On November 15, 2001, after the amended solicitation, CR Associates submitted its revised proposal. It made a substantial adjustment to its price, from $4,583,348 to $4,165,572, which would have given it a lower price than Dr. Downing. If the VA had accepted CR Associates' price revision, it would have had the second lowest price, the highest technical score, and the highest overall score. Plaintiff alleges that VA officials wrongfully disregarded this revision to price by CR Associates, further demonstrating a fixation on awarding the contract to Dr. Downing. Plaintiff acknowledges, however, that if the VA's rejection of CR Associates' revision was improper, only CR Associates would benefit. It nevertheless asks the court to consider the allegations as support for its contention that the procurement process lacked credibility and integrity.

We disagree. The VA asserts that it legitimately viewed CR Associates' price revision as a counter-offer because it was a deviation from the technical specifications of the solicitation. There is nothing in the administrative record which calls into question that assertion. Thus the court must assume that the real reason it rejected the revision was the one stated.

■ Galen also asserts that the amended solicitation was improperly conducted without meaningful discussions to inform offerors

5. The VA did not contact references. The score reductions were apparently based on reading the

letters accompanying plaintiff's references.

of significant weaknesses in their proposals, citing 48 C.F.R. § 15.306(d)(3). A solicitation, however, may be awarded without discussions, if so indicated in the solicitation. *See id.* § 15.306(a)(3). The solicitation here stated that it would be awarded with no discussions, although the VA reserved the right to conduct them later. Thus, the VA was not required to discuss weaknesses in bidders' proposals.

Plaintiff claims that the VA evaluators scored plaintiff unfairly. For example, even though plaintiff's score in the initial evaluation process was 188, its score after the amended solicitation dropped to 175. Its technical proposal score fell from 89 to 75. Ms. Gloria Matory, the only evaluator to participate on both panels, reduced plaintiff's technical proposal score on her score sheet from 85 in the initial solicitation to 79 after amendment. Plaintiff alleges that this demonstrates bias.

Once again, we disagree. The VA could not require evaluators on the second panel to score plaintiff's proposal in the same way the second time. Moreover, the record supports the evaluators' concerns that plaintiff lacked proper references, a viable clinic location, adequate capacity for the veteran population, and documentation of adequate support staff. While these concerns may not have been treated as rendering plaintiff's offer non-responsive, they were plainly serious concerns for the evaluators. Plaintiff has not offered any evidence that these concerns were contrived.

■ Plaintiff highlights Dr. Downing's incumbent status and her close ties with the VA as evidence of bias. For example, two of Dr. Downing's references participated as evaluators during the solicitation process. Accepting plaintiff's argument, however, would improperly penalize Dr. Downing simply for the experience and familiarity with the agency she acquired as the incumbent contractor. *See Omega World Travel*, 54 Fed. Cl. at 575 ("An agency . . . is not obligated to equalize all other offerors with an incumbent. Instead, the natural advantage that an incumbent may have is permissible." (citation omitted)). The mere fact that Dr. Downing's references were included on the panel as evaluators does not support a presumption of bias.

Plaintiff alleges that the VA wrongly allowed Dr. Downing to continue the contract throughout the solicitations and disputes. We find this fact irrelevant. Even if the VA did not obtain proper permission to continue the contract throughout the process, this fact does not show procurement violations, it only potentially evidences errors outside of the competitive process. This allegation, in any event, is insufficient to show bias or arbitrariness in awarding the contract. The agency had every incentive to keep work on the contract going forward throughout the protests.

In conclusion, we find that the VA award to Dr. Downing was not arbitrary, capricious, or an abuse of discretion. The VA had sufficient basis to conclude that Dr. Downing represented the best value to the government. Furthermore, although we acknowledge that the circumstances surrounding the solicitation might raise questions about the agency's sloppiness in record-keeping, and while the agency could have been more forthcoming in its discussions with plaintiff, concrete proof of bias does not exist.

We have considered plaintiff's numerous other arguments and find them also insufficient to warrant the extraordinary remedy of injunctive relief.

## CONCLUSION

Plaintiff's motion for judgment on the administrative record is denied. Defendant's and intervenor's motions are granted. The clerk is directed to dismiss the complaint with prejudice. No costs.